# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEREK JAMES BEACH,

        Defendant-Appellant.

UNPUBLISHED
April 18, 2017

No. 330140
Monroe Circuit Court
LC No. 15-041747-FC

Before: FORT HOOD, P.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of armed robbery, MCL 750.529.[1] He was sentenced to 12 to 30 years' imprisonment for the armed robbery conviction. We affirm defendant's conviction, but vacate his sentence and remand for resentencing.

On the morning of January 24, 2015, two men robbed a Sunoco gas station in Monroe, Michigan. Cody Wilson, one of the perpetrators, pleaded guilty to unarmed robbery in exchange for his testimony. At trial, he identified defendant as the second perpetrator. According to Wilson, he entered the Sunoco store first, and defendant came in second while holding a gun.

## I. SUFFICIENCY OF THE EVIDENCE

First, defendant argues that insufficient evidence existed to convict him of armed robbery because the jury acquitted him of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We disagree.

We review claims of insufficient evidence de novo. *People v Harrison*, 283 Mich App 374, 377; 768 NW2d 98 (2009). The evidence must be viewed in a light most favorable to the prosecution to "determine whether a rational trier of fact could find that the essential elements of the crimes were proven beyond a reasonable doubt." *Id*. at 377-378. We will not interfere with

---

[1] Defendant was also charged with possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, but the jury found him not guilty of that charge.

-1-

the jury's determinations regarding the weight of the evidence or the credibility of the witnesses. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

The elements of armed robbery are:

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007).]

At trial, Deborah Perry, the store clerk working at the time of the robbery, testified that the second man to enter the Sunoco store, identified by Wilson as defendant, pulled out a gun and pointed it right at her. She described the gun as black with a big barrel. Wilson also testified that defendant pointed a black handgun at Perry during the robbery. From this testimony, a rational trier of fact could find, beyond a reasonable doubt, that defendant either possessed a dangerous weapon, possessed an object used in a manner to lead a person to reasonably believe it was a dangerous weapon, or represented that he possessed a dangerous weapon.

Defendant incorrectly asserts that because the jury acquitted him of felony-firearm, insufficient evidence existed to convict him of armed robbery. In so doing, he points out that the trial court instructed the jury that defendant could be convicted of armed robbery if the jury found, beyond a reasonable doubt, that he possessed a weapon designed to be dangerous. We conclude that the jury's verdict was not inconsistent. " 'The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony.' " *People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011) (citation omitted). Possession of a firearm is not an element of armed robbery. Therefore, even considering the trial court's specific instruction to the jury that it must find defendant possessed a dangerous *weapon* during the robbery, the jury could have believed, based on viewing the surveillance video and listening to testimony, that defendant did not possess a firearm, but did possess some other type of dangerous weapon. Regardless, "consistency in jury verdicts in criminal cases is not necessary." *People v Russell*, 297 Mich App 707, 723; 825 NW2d 623 (2012). Accordingly, we conclude that there was sufficient evidence to convict defendant of armed robbery.

## II. ADMISSION OF EVIDENCE

Next, defendant argues that the trial court abused its discretion when it admitted into evidence cash, Newport cigarettes, and clothing found at the home of defendant's wife, Kylee Beach, on the day of the robbery. He asserts that the prosecution failed to demonstrate a sufficient foundation linking the items to the robbery and that the probative value of the evidence was outweighed by the danger of unfair prejudice. We disagree.

When an evidentiary issue has been preserved on appeal, this Court reviews the trial court's decision to admit evidence for an abuse of discretion and reviews de novo "preliminary

questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

Evidence is relevant if it has " 'any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence.' " *People v Coy*, 258 Mich App 1, 13; 669 NW2d 831 (2003), quoting MRE 401. "[A] material fact need not be an element of a crime or cause of action or defense but it must, at least, be in issue in the sense that it is within the range of litigated matters in controversy." *People v Powell*, 303 Mich App 271, 277; 842 NW2d 538 (2013) (citation and quotation marks omitted; alteration in original). Generally, relevant evidence is admissible at trial while irrelevant evidence is not. MRE 402; *People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011). Evidence that is relevant may be excluded, however, if the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. " 'Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury.' " *People v Danto*, 294 Mich App 596, 600; 822 NW2d 600 (2011) (citation omitted).

The items at issue were relevant to the case. According to the testimony of Wilson and Perry, the robbers took a carton of Newport cigarettes and over $200 in cash and rolled coins from the Sunoco store. Further, Trooper Daniel Drewyor, who searched Kylee's apartment, and Perry both testified that the coat admitted into evidence matched that worn by the second robber. Thus, the fact that the troopers recovered cash, Newport cigarettes, and a coat of the same type worn by the second robber from Kylee's apartment, where troopers located defendant, made it more probable that defendant participated in the robbery than it would be without the evidence. Therefore, the evidence was relevant. See MRE 401.

Further, the probative value of the evidence admitted, especially when considered collectively, was not substantially outweighed by the danger of unfair prejudice. Although the presence of cash at Kylee's apartment, in and of itself, does not demonstrate that defendant robbed the Sunoco store, the recovery of cash, Newport cigarettes, and a coat identical to that worn by one of the robbers, all together, is highly probative. Again, the second robber, identified by Wilson as defendant, took a carton of Newport cigarettes from the store. In addition, Perry testified that the second robber wore a coat matching that recovered from Kylee's apartment, and Trooper Drewyor testified that the clothing was extremely similar to the clothing he observed in the surveillance video. Accordingly, we conclude that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. See MRE 403.

### III. SCORING OF OFFENSE VARIABLES

Defendant's third claim on appeal is that the trial court improperly scored offense variables (OVs) 1, 2, 4, and 14 based on inaccurate information, and he is entitled to resentencing. We agree that the trial court improperly assessed 10 points for OV 4, but disagree that the trial court improperly scored the remaining OVs.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). " 'Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made.' " *People v Brooks*, 304 Mich App 318, 319-320; 848 NW2d 161 (2014) (citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

"When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR [presentence investigation report], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). In *People v Lockridge*, 498 Mich 358, 392 n 28, 399; 870 NW2d 502 (2015), our Supreme Court held that the sentencing guidelines are advisory only, but also clarified that the highest number of points must be assessed for all OVs, regardless of whether the OVs require judicial fact-finding. Following *Lockridge*, this Court concluded that when the trial court sentences a defendant on the basis of an incorrect sentencing guidelines range, the defendant is entitled to be resentenced. See *People v Sours*, 315 Mich App 346, 350-351; ___ NW2d ___ (2016).

The trial court assessed 15 points for OV 1. OV 1 addresses aggravated use of a weapon. MCL 777.31(1); *Brooks*, 304 Mich App at 320. Fifteen points should be assessed if "[a] firearm was pointed at or toward a victim." MCL 777.31(1)(c). Five points should be assessed if "[a] weapon was displayed or implied." MCL 777.31(1)(e). However, a court cannot assess five points for the sentencing offense of armed robbery. MCL 777.31(2)(e). A preponderance of the evidence supported the trial court's assessment. Perry testified that the second robber, identified by Wilson as defendant, pointed a gun at her. She believed the gun to be black with a large barrel. Wilson also testified that defendant pointed a handgun at Perry. Therefore, the trial court did not err by assessing 15 points for OV 1.

Next, the trial court assessed five points for OV 2. OV 2 involves the "lethal potential of the weapon possessed or used" during an offense. MCL 777.32(1). Five points should be assessed if "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon." MCL 777.32(1)(d). " 'Pistol,' 'rifle,' or 'shotgun' includes a revolver, semi-automatic pistol, rifle, shotgun, combination rifle and shotgun, or other firearm manufactured in or after 1898 that fires fixed ammunition, but does not include a fully automatic weapon or short-barreled shotgun or short-barreled rifle." MCL 777.32(3)(c). Again, both Perry and Wilson testified that defendant possessed a firearm during the robbery. Perry described it as black with a large barrel and confirmed she believed it to be a handgun. Wilson described it as "a black handgun." Further, the PSIR, under the title "Defendant's Description of the Offense," provides, "[D]efendant stated they decided the defendant would possess the gun for this offense." Thus, a preponderance of the evidence supported the trial court's assessment of five points for OV 2.

In addition, we conclude that the trial court properly assessed 10 points for OV 14. OV 14 involves an offender's role in a crime. MCL 777.44. Ten points should be assessed where "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). To score OV 14, a court should consider "[t]he entire criminal transaction." MCL 777.44(2)(a). If two

offenders are involved, only one may be considered the leader. *People v Rhodes* (*On Remand*), 305 Mich App 85, 88; 849 NW2d 417 (2014). The statute contains no definition of the word "leader." *Id*. at 90. While a "defendant's exclusive possession of a gun during the criminal transaction is *some* evidence of leadership, . . . it does not meet the preponderance of the evidence standard found in *Hardy*." *Id*.

A preponderance of the evidence supported the trial court's determination that defendant acted as the leader in the robbery. In addition to the testimony that defendant solely possessed and wielded a gun during the incident, Wilson testified that defendant brought up robbing the Sunoco store first, and Wilson just agreed to participate in the plan. Wilson did not even know that defendant possessed a gun until defendant pointed it at Perry. Wilson did enter the store first and asked for the additional money under the cash register, but Wilson kept neither the cigarettes nor any of the money. Instead, those items remained in defendant's car. Thus, the trial court did not err when it assessed 10 points for OV 14.

However, we conclude that the trial court erred by assessing 10 points for OV 4. A court should assess 10 points for OV 4 if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). MCL 777.34(2) provides, "Score 10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." A "trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014).

In *People v McChester*, 310 Mich App 354, 356, 358-359; 873 NW2d 646 (2015), this Court concluded that a statement in the PSIR that the victim was "visibly shaken" when the police arrived at the scene of a gas station robbery was insufficient to establish a serious psychological injury requiring professional treatment. The facts of *McChester* are strikingly similar to the facts of the instant case. In *McChester*, the defendant entered a gas station, approached the cashier, asked for a pack of cigarettes, and then told the cashier to give him everything that was in the cash register. *Id*. at 355-356. The defendant's hand was in his pocket, and he made a gesture indicative of having a gun. *Id*. at 356. The defendant stated " 'I really don't wanna pull this trigger on you so empty the register and give me everything.' " *Id*. The defendant fled the scene with cigarettes and money. *Id*. The only evidence regarding the victim's psychological state was a statement in the PSIR that the victim was "visibly shaken" when the police arrived at the scene. *Id*. This Court concluded that this was insufficient to establish a serious psychological injury. *Id*. at 359. This Court differentiated the case from other cases holding that the trial court properly assessed points for OV 4 when there was evidence that the victim was fearful during the incident by explaining that there was additional evidence supporting the assessment of points in those cases. *Id*. at 359-360.

We conclude that the trial court's assessment of 10 points was not supported by a preponderance of the evidence. Perry testified that, when the second robber, identified by Wilson as defendant, pointed the gun at her, she did not know if he planned to shoot her. She worried she would never see her son again. She also confirmed that she was fearful during the robbery. In her victim impact statement, Perry said that the robbery was upsetting for her when it happened, that she feared she would not return home to her son, and that she is more cautious

at work now as a result of the incident. When assessing 10 points for OV 4, the court explained that, in addition to the above evidence, Perry appeared agitated while testifying in court.

However, we conclude that the fact that Perry testified that she was afraid during the incident does not establish that she suffered a *serious* psychological injury requiring professional treatment. Nearly every victim of a crime will experience fear during the criminal offense, and we conclude that the fact that Perry was afraid at the time of the incident, by itself, does not give rise to a serious psychological injury requiring professional treatment. In addition, the fact that Perry is more cautious at work because of the incident does not establish that she has a serious psychological injury that may require professional treatment. Further, we conclude that Perry's agitation while recounting the incident at trial does not demonstrate a serious psychological injury requiring professional treatment. There is no additional evidence in the record regarding the psychological effect of the incident on Perry. Therefore, the court improperly assessed 10 points for OV 4. See *McChester*, 310 Mich App at 359-360.[2]

Defendant's prior record variable (PRV) score was 40 points, placing him in PRV-level D. His total OV score was 40 points, placing him in OV-level III. The subtraction of 10 points from defendant's OV score places defendant in OV-level II. See MCL 777.62. This alters the sentencing guidelines from 108 to 180 months' imprisonment to 81 to 135 months' imprisonment. See *id*. Therefore, defendant is entitled to resentencing. See *Sours*, 315 Mich App at 350-351. The court must conduct the resentencing pursuant to *Lockridge*. See *People v Biddles*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 326140); slip op at 5.

## IV. JUDICIAL FACT-FINDING

Next, defendant argues that he is entitled to a *Crosby*[3] remand because the trial court used facts not found by the jury, nor admitted by defendant, to score OVs 1, 2, 4, and 14. We conclude that the issue is moot.

In *Lockridge*, the Michigan Supreme Court considered the application of the rules set forth in *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), and *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), to Michigan's sentencing guidelines, and held that Michigan's sentencing scheme violated the Sixth Amendment right to a jury trial by requiring "judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase the floor of the guidelines minimum sentence range, i.e., the 'mandatory minimum' sentence under *Alleyne*." *Lockridge*, 498 Mich at 364. The Court concluded that the sentencing guidelines

---

[2] We note that this case can be distinguished from *People v Apgar*, 264 Mich App 321, 323-324, 329; 690 NW2d 312 (2004) (opinion by GAGE, J.); *id*. at 331-332 (O'CONNELL, J., concurring), in which this Court held that the trial court properly assessed 10 points for OV 4 when the victim testified that she was fearful during the incident, because *Apgar* involved the very different factual scenario of a brutal and violent rape of a minor child.

[3] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

range was advisory only, but clarified that "a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence." *Id*. at 365. This Court has held that when a defendant can establish that he is entitled to resentencing because the trial court incorrectly scored the guidelines, the defendant's *Lockridge* issue is moot. *Sours*, 315 Mich App at 351-352. Accordingly, the issue regarding judicial fact-finding at sentencing is moot. See *id*.

## V. SEX OFFENDER REGISTRATION

Finally, defendant argues that the trial court erred when it required that he register as a sex offender under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*. We agree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Because defendant failed to challenge the trial court's requirement that he register under SORA, this issue has not been preserved for appellate review.

"The construction and application of SORA . . . presents a question of law that is reviewed de novo on appeal." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009). The trial court's factual findings at sentencing are reviewed for clear error, which "exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). However, because the issue is unpreserved, we review the issue for plain error affecting defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Defendant's judgment of sentence requires that he register as a sex offender under SORA. When imposing this requirement at sentencing, the trial court failed to specifically state its basis for doing so. Instead, the trial court stated:

> [Y]ou're not to have any contact with any children under the age of 17 unless with an adult responsible for that child and it is approved by your parole agent. You must not purchase, possess sexually stimulating materials or go into any stores or other places like that that sell those things. Complete and submit to all sex offender treatment that is available in the system or as your agent requires. You cannot reside within 1,000 feet of any student safety zone, kindergarten through 12th grade unless you meet a statutory exemption and you have the permission of your parole agent. You cannot go into parks or be within 500 feet of them or swimming pools, playgrounds, child care centers, preschools, arcades or other places primarily used by an individual age 17 or under without approval of your parole agent. Do not access social networking cites [sic]. Report any personal protection orders within 24 hours of same. You must register, 'cause you're already required to do it, under the Sex Offender Registration Act even though it may not be public, I believe the report said--or maybe that was the other case, I don't really recall, but you have to comply with that in either event. And allow your parole agent into your residence at anytime [sic] for supervision as the case may be.

-7-

According to defendant's PSIR, at the time of the armed robbery offense, defendant was on Holmes Youthful Trainee Act (HYTA) probation in Wayne County for third-degree criminal sexual conduct (victim at least 13 years old but less than 16 years old) (CSC-III), MCL 750.520d(1)(a). Further, the PSIR indicates that a petition to discharge defendant from HYTA probation was submitted on January 23, 2015, but withdrawn because of defendant's involvement in this armed robbery. Registration under SORA is required for "[a]n individual who is convicted of a listed offense after October 1, 1995." MCL 28.723(1)(a). Registration is also required for "[a]n individual who was previously convicted of a listed offense for which he or she was not required to register under this act, but who is convicted of any other felony on or after July 1, 2011." MCL 28.723(1)(e). In general, " '[a]n assignment to youthful trainee status [HYTA] does not constitute a conviction of a crime unless the court revokes the defendant's status as a youthful trainee.' " *People v Temelkoski*, 307 Mich App 241, 247; 859 NW2d 743 (2014) (citation omitted), lv gtd 498 Mich 942 (2015). Being assigned to HYTA status before October 1, 2004, does constitute a conviction under SORA. MCL 28.722(b)(*ii*)(A) and (B).

Armed robbery is not a listed offense, nor does it fall within the catchall provision which states that "[a]ny other violation of a law of this state or a local ordinance of a municipality, other than a tier II or tier III offense, that by its nature constitutes a sexual offense against an individual who is a minor" should be considered a tier I listed offense. MCL 28.722(s)(*vii*). In addition, according to the PSIR, defendant was assigned to HYTA probation in 2013, not prior to 2004, and nothing in the record provided to this Court establishes that defendant's HYTA status has been revoked. At sentencing, the trial court did not indicate that it ordered defendant to register under SORA because his HYTA status for the CSC-III offense in Wayne County had been revoked, and the court did not provide any other explanation for its action. Thus, based on the information in the record before us, the trial court erred when it required defendant to register under SORA.[4]

We affirm defendant's conviction, vacate his sentence, and remand for resentencing. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra

---

[4] MCL 762.12(2)(a) provides that a court must revoke an individual's HYTA status if the individual pleads guilty to or is convicted of "[a] felony for which the maximum penalty is imprisonment for life" during the period of assignment. However, this provision took effect on August 18, 2015, after the trial court sentenced defendant in this case. See 2015 PA 32. Thus, it could not have been the basis for the trial court's order that defendant register under SORA.